UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NELIA VIRTUSIO,

    Plaintiff,

    v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY LONG TERM DISABILITY INCOME PLAN, et al.,

    Defendants.

_____/

No. C 12-3745 PJH

**ORDER**

Before the court is the motion of defendant Financial Industry Regulatory Authority ("FINRA"[1]) for an order dismissing the third cause of action for insufficient service and failure to state a claim. Because the court finds that the third cause of action is time-barred, the motion to dismiss for failure to state a claim is GRANTED.

Plaintiff Nella Virtusio was employed by FINRA from 1989 until 2009, and was a beneficiary under defendant Financial Industry Regulatory Authority Long Term Disability Income Plan ("the Plan"). The Plan was insured by defendant Sun Life Assurance Company of Canada ("Sun Life").

Plaintiff alleges that she became disabled in February 2009. She filed a claim for long-term disability ("LTD") benefits with Sun Life on March 9, 2010. By letter dated

---

[1] FINRA – which was created in 2007 from a merger of the National Association of Securities Dealers, Inc., and the member regulation, enforcement and arbitration operations of the New York Stock Exchange – is a "'self-regulatory organization'" as defined in the Securities and Exchange Act that oversees the conduct of securities brokers and brokerage firms. See 15 U.S.C. §§ 78c(a)(26), 78s(b); Sacks v. S.E.C., 648 F.3d 945, 948 & n.1 (9th Cir. 2011.) It is responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; and arbitration and mediation. Id.

November 10, 2010, Sun Life approved plaintiff's claim, but only for a portion of the "own occupation" period, from August 27, 2009, through October 12, 2009.  On May 4, 2011, plaintiff appealed to Sun Life contesting the termination of her benefits, but also requested that the appeals process be tolled while she gathered additional information to support her appeal.  By letter dated May 10, 2011, Sun Life agreed to toll the appeal process.

On October 6, 2011, plaintiff filed suit against FINRA in San Francisco Superior Court, alleging breach of contract, bad faith breach of the implied covenant, intentional infliction of emotional distress, and failure to pay wages.  She alleged that FINRA maintained a "self-funded salary continuation program for employees with short-term disabilities," and that under this program an employee with 10 years' at FINRA is entitled to receive 100% of her pay for a period of up to 121 workdays after a waiting period of nine workdays (that is, a short-term disability or "STD" program).

Plaintiff asserted that Sun Life was the administrator of the STD salary continuation program, which she claimed was exempt from ERISA requirements because it was self-funded.  She also alleged that Sun Life had refused to pay her STD salary-continuation benefits, on the basis that she had a pending worker's comp claim, and the salary-continuation program was not designed to compensate for workplace occupational injury.  On February 6, 2012, FINRA removed the case to this court as No. C-12-0602 NC, alleging diversity jurisdiction.

Meanwhile, on the claim for LTD benefits, plaintiff made her final submission to Sun Life on October 19, 2011.  In a letter dated December 1, 2011, Sun Life notified plaintiff that it needed an additional 45 days to make a determination on her appeal.  Within that 45-day period, Sun Life reversed its previous decision and approved plaintiff's benefits through the remainder of her 24-month "own occupation" period, which ended August 26, 2011.

On February 27, 2012, plaintiff submitted her claim for "any occupation" disability benefits to Sun Life.  By letters dated March 14 and April 27, 2012, Sun Life advised plaintiff that it had tolled her claim on its own initiative, because it had not received medical documentation it required from her medical providers.  Plaintiff claims that Sun Life did not

request any additional information from her.

Sun Life advised plaintiff by letter dated May 26, 2012 that it had received all requested medical documentation, and that it hoped to complete the claim review "in the near future," though it did not provide a date. After May 26, 2012, plaintiff's counsel and Sun Life exchanged a series of phone calls, voicemail messages, and letters regarding the review process. Plaintiff claims that under ERISA regulation 29 C.F.R. § 2560.503-1(f)(3), Sun Life was required to make the determination on plaintiff's "any occupation" claim by June 11, 2012. However, according to plaintiff, Sun Life failed to do so.

Plaintiff filed the original complaint in this action on July 17, 2012, against Sun Life and the Plan, asserting two causes of action – a "claim for relief under ERISA," and a claim for interest on unpaid benefits, under California Insurance Code § 10111.2. However, she did not request issuance of summons, and service of the original complaint was not effectuated as required under California law. Instead, plaintiff's counsel mailed a "Notice of Lawsuit" and a request for waiver of service of summons to counsel for Sun Life and the Plan, but the notice and acknowledgment of receipt was not returned to plaintiff's counsel's office.

In her opposition to the present motion, plaintiff asserts that LTD Plan approved benefits "immediately after" she filed the present action. She also contends that "[t]here is a remaining issue with the long term plan concerning an offset, and because the parties believe they will resolve the offset issue and [plaintiff's] claim for fees, the plan has not yet filed a responsive pleading."

On September 7, 2012 plaintiff filed a first amended complaint ("FAC"), adding FINRA as a defendant, and asserting three causes of action – a claim for ERISA benefits due, against the Plan and Sun Life; a claim for payment of interest, under Insurance Code § 10111.2, against Sun Life only; and a claim under 29 U.S.C. § 1140 against FINRA only. On September 10, 2012, plaintiff requested issuance of summons against all three defendants. Plaintiff's counsel mailed the summons and the FAC to Sun Life and the Plan.

In the third cause of action, which is the sole claim asserted against FINRA, plaintiff

1  alleges that she was terminated from her employment on September 11, 2009, and that the
2  stated reason for the termination was FINRA's inability to accommodate an "apparently
3  indefinite leave of absence."

4  Plaintiff asserts, however, that it is FINRA's policy to provide reasonable
5  accommodations for disabled employees through an interactive process involving the
6  employee's immediate supervisor with the assistance of the HR Service Manager and the
7  Office of General Counsel.  Plaintiff alleges that FINRA failed to follow this policy in
8  determining whether to accommodate her continued need for disability leave.  Plaintiff
9  alleges that this conduct violated ERISA § 510 because the termination was intended to
10 deprive her of employment benefits regulated by ERISA to which she was entitled while on
11 leave, such as medical coverage.

12 ERISA § 510, which is entitled "interference with protected rights," is a whistleblower
13 statute.  McBride v. Plum Int'l, Inc., 179 F.3d 737, 742 (9th Cir. 1999).  Under § 510, it is
14 unlawful for any person to, among other things, discharge or discriminate against a
15 participant or beneficiary of an employee benefit plan for exercising any right to which
16 he/she is entitled or for the purpose of interfering with the attainment of any right to which
17 such person may become entitled under the plan.  29 U.S.C. § 1140.

18 In the opposition to the present motion, plaintiff asserts that because of her
19 disability, she was entitled to a waiver of premium on her medical insurance (an ERISA
20 benefit), and that she was terminated on September 11, 2009, while on disability, to
21 prevent her from obtaining the waiver of premium on her medical insurance, in violation of §
22 510.

23 On October 2, 2012, FINRA filed the present motion to dismiss, seeking an order
24 dismissing the FAC because plaintiff did not seek leave to amend, which FINRA claims was
25 required under Federal Rule of Civil Procedure 15(a) because plaintiff had not properly
26 served the original complaint on any of the defendants.  In the alternative, FINRA seeks an
27 order dismissing the third cause of action as time-barred.
28

4

**DISCUSSION**

A. Legal Standards

    1. Motion to dismiss for insufficient service

Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) permit a defendant to challenge the form of summons and the method of service attempted by plaintiff, respectively. The two rules serve distinct purposes, though they are sometimes confused:

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a [R]ule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.

5A Wright & Miller, Fed. Prac. and Proc. Civ. § 1353 (3d ed. 2012) (citations omitted). Here, FINRA does not claim that there were defects in the form of the summons; rather, the challenge is to the adequacy of service.

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss the complaint for insufficient service of process. In the absence of service of process (or a waiver of service by the defendant), a court may not ordinarily exercise power over a party the complaint names as a defendant. Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350-51 (1999); see also Omni Capital, Inc., Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied). Once service is challenged, the plaintiff bears the burden of establishing that service was valid under Federal Rule of Civil Procedure 4. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

    2. Motion to dismiss for failure to state a claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

5

requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

B.   Defendant's Motion

FINRA makes two main arguments – that the entire FAC should be dismissed because it was not validly served, and, moreover, that plaintiff was not authorized under Rule 15(a) to file the FAC without leave of court; and that the ERISA § 510 claim is time-barred.

1.   Dismissal for ineffective service

FINRA argues that service of the summons and complaint was insufficient because it was never served with the original complaint (which is not surprising, given that FINRA was not named as a defendant in the original complaint). FINRA does not say whether either the summons or the FAC were served on it. Nevertheless, instead of focusing on the adequacy of service, FINRA instead argues that because the original complaint was not properly served, plaintiff was not entitled to amend the complaint as of right as allowed by Rule 15(a).

In opposition, plaintiff concedes that there was no effective service of the original complaint, but argues that because notice of the suit was delivered to counsel for the Plan and the insurer, and because plaintiff requested that those defendants waive service of the summons and complaint, that is as good as service and she should not have been

precluded from exercising her right to amend the complaint once as of right. She also asserts that the FAC was served on the original defendants (though she does not claim that the summons was served in accordance with Rule 4, or that she ever served FINRA).

In reply, FINRA argues that plaintiff has failed to refute the contention that the FAC is "procedurally defective" because the original complaint was not properly served. FINRA notes that it is distinct from the other two defendants, and that plaintiff has not argued that she served FINRA with the complaint or even provided a waiver of service form. FINRA contends that because plaintiff never served the original complaint on FINRA, she was required to either seek leave of court or consent of FINRA to amend the complaint. Thus, FINRA argues, the entire FAC should be dismissed under Rules 12(b)(4) and 12(b)(5).

There appears to be no dispute that the original complaint, which in any event did not name FINRA as a defendant, was never properly served. Plaintiff evidently delivered it in some way to Sun Life and the Plan on August 13, 2012, with a request that they return an executed waiver of service of summons, but Sun Life and the Plan never signed or returned the notice and acknowledgment of receipt. Moreover, the summons had not been issued as of the date the complaint (or notice of suit) was purportedly mailed to Sun Life and the Plan.

Plaintiff filed the FAC on September 7, 2012, naming FINRA as a defendant for the first time, and the summons was issued on September 10, 2012. Plaintiff claims that the summons and FAC were mailed to Sun Life and the Plan on September 11, 2012. However, plaintiff says nothing about service on FINRA.

Under Rule 4, a corporation being served in a judicial district of the United States must be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Rule 4(e)(1) provides that an individual may be served by "following state law" or by either delivering a copy to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides

7

there, or delivering a copy to any agent authorized to receive service of process.

"Substantial compliance" with Rule 4 is required in order to uphold service of process, even when a defendant has received actual notice. Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982); Collagen Nutraceuticals, Inc. v. Neocell Corp., 2010 WL 3719101, at *1 (S.D. Cal. Sept. 20, 2010). Here, it appears that the summons and FAC were never properly served on any defendant, and also, possibly, were never served at all (even by mail) on FINRA. If this were simply a matter of dismissal for insufficient service of process, the motion could probably be granted as to FINRA. (Since the other two defendants have not joined in the motion, the FAC cannot be dismissed as to them, as FINRA seems to be suggesting.)

However, FINRA's main argument (as the court understands it) is that because Rule 15(a) allows a party to amend a pleading once as a matter of course "within . . . 21 days after serving it," and because plaintiff did not properly serve the original complaint, she was not authorized under the rule to file the FAC as of right. Thus, FINRA asserts, since plaintiff was not entitled to amend the complaint, it should be dismissed on that basis.

Based on the lack of clarity in the arguments, and the fact that the other two defendants did not join in the motion (and are evidently working towards settlement) the court finds that FINRA's motion to dismiss for insufficiency of service must be DENIED. Moreover, the court is not convinced by FINRA's argument that Rule 15(a) does not permit a plaintiff to file an amended complaint as of right if the original complaint has not been served. Nevertheless, as discussed below, the sole claim asserted against FINRA can be dismissed as time-barred, so FINRA will be out of the case in any event.

2. Whether the § 510 claim asserted against FINRA is time-barred.

FINRA argues that because plaintiff was terminated in September 2009, and did not file this action until July 2012 (and did not add the ERISA § 510 claim until September 2012), the § 510 claim is time-barred because the applicable limitation period is two years. In response, plaintiff argues that the relevant statute of limitations is four years, citing the Ninth Circuit's decision in Hinton v. NMI Pacific Enters., 5 F.3d 391 (9th Cir. 1993), which

8

she asserts is directly on point.

As indicated above, ERISA § 510 protects an employee from being discharged to avoid payment of pension or welfare benefits. 29 U.S.C. § 1140. Because there is no express statute of limitations for a claim of violation of ERISA § 510, courts must determine the applicable statute of limitations by looking to the most analogous state statute of limitations.

In Felton v. Unisource Corp., 940 F.2d 503 (1991), the Ninth Circuit held that the state law claim that was "most analogous" to a § 510 claim was "wrongful termination against public policy or retaliatory discharge." Id. at 512. Two years later, in Hinton, the Ninth Circuit acknowledged the basic holding in Felton – that the court should look for the most analogous state law statute of limitations. At that time the limitations period for wrongful termination was one year under California law. However, the Hinton court also noted (citing Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988)) that California allows a wrongful termination claim to be pled in contract as well as in tort and that the limitation periods for contract claims were two years (for oral contracts, under California Code of Civil Procedure § 339) and four years (for written contracts, under California Code of Civil Procedure § 337). See Hinton, 3 F.3d at 394.

Nevertheless, the court found that the four-year limitation period for breach of written contract did not apply because the § 510 claim was a claim of wrongful termination, not a claim that written provisions of the benefits plan had been breached by the termination. Id. And under the two-year limitation period for breach of oral contract, the plaintiff's claim was time-barred. Id.

Five years after Hinton, in Burrey v. Pacific Gas & Elec. Co., 159 F.3d 388 (9th Cir. 1998), the court revisited the issue. The court again affirmed that § 510 borrows the state law statute of limitations used for discrimination claims, which the court found would be the limitations period for a state law claim of wrongful termination in violation of public policy or retaliatory discharge in California. Id. at 396. Under California law, the limitation period for wrongful termination or retaliatory discharge is based on the statute of limitations for

9

personal injury claims.  See Barton v. New United Motor Mfcting, Inc., 43 Cal. App. 4th 1200, 1208-09 (1996).  Currently, under California Code of Civil Procedure § 335.1, that limitations period is two years.

In Barton, the California Court of Appeal addressed the uncertainty that had been created by the fact that some courts applied the (then) one-year personal injury statute of limitations to wrongful discharge actions, while other courts applied the two-year statute of limitations for breach of contract not based on an instrument of writing.  The Barton court concluded that "where the primary nature of the right sued upon in a . . . wrongful termination action is personal," the one-year statute of limitations applied.  Id. at 1209.

In Burrey, the Ninth Circuit noted that it had at times applied the one-year statute for personal injury, and at other times applied the two-year statute of breach of other-than-written contract (including in Hinton), but concluded that "[i]n light of Barton, . . . the one-year statute of limitations set forth in Code of Civil Procedure section 340(3) applies to the plaintiffs' ERISA Section 510 claim."  Since that time, there have been no cases that have applied the limitation period for breach of contract claims.  So while plaintiff is technically correct when he argues that Hinton has not been overruled, the Ninth Circuit no longer follows the rule stated in Hinton, for the reasons set forth in Burrey.

Here, the essence of plaintiff's claim is that she was terminated while she was disabled, for the purpose of denying her certain benefits she was entitled to under ERISA (apparently, based on the opposition, the waiver of payment of insurance premium) – not that FINRA breached the terms of the benefits plan.  Thus, the two-year limitation period in the current version of Code of Civil Procedure § 340(3) applies.

Plaintiff also argues, however, that the running of the statute should be equitably tolled because she filed a claim against FINRA in the worker's compensation proceeding, asserting that she had been terminated while on temporary disability, in violation of Labor Code § 132a.  She asserts that under Elkins v. Derby, 12 Cal. 3d 410 (1974), the filing of a workers compensation proceeding tolls the filing of a complaint containing similar facts in court, and the latter-filed action will relate back to the date of the earlier filed one.

In support of this argument, plaintiff does not set forth the standard for applying equitable tolling or analyze the facts of this case in connection with that standard. Instead, she simply inserts a lengthy quotation from a Ninth Circuit case, Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1139 (9th Cir. 2001).

In response, FINRA asserts, first, that the applicable statute of limitations is two years, as set forth in Burrey; and second, that plaintiff has not sustained her burden for proving equitable tolling.

In Elkins, the California Supreme Court held that the statute of limitations for a personal injury claim against an employer was tolled while an employee pursued his workers' compensation claims arising out of the same accident. Id., 12 Cal. 3d at 414. The court concluded that "if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" Id.

As the doctrine has developed in the years since Elkins, tolling is appropriate where the record shows "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Daviton, 241 F.3d at 1137-38 (citations omitted); see also id. at 1135 (where federal court borrows analogous state statute of limitations, it also borrows the state's equitable tolling rules).

FINRA argues that Hinton, one of the cases that plaintiff cites in her opposition, explains why plaintiff's equitable tolling argument should be rejected. In that case, the plaintiff also filed a worker's comp claim against the defendant employer, which included a claim of retaliation under Labor Code § 132. Later (after the limitations period had run), the plaintiff amended the complaint in federal court against the defendant, to add an ERISA § 510 claim. Hinton, 5 F.3d at 396.

In rejecting the plaintiff's equitable tolling argument, the court first noted that the worker's compensation claim included a charge that the employer had terminated the plaintiff's employment in retaliation for her claim of a work-related injury, in violation of

11

California Labor Code § 132a; and that the amended complaint had included a claim that the employer terminated the plaintiff and compelled her to resign on threat of loss of benefits, for the purpose of interfering with her attainment of rights under the benefit plans, in violation of ERISA § 510. Id.

The court noted that while equity would toll a statute of limitations while a plaintiff, who possesses different legal remedies for the same legal wrong, pursues only one remedy as to that legal wrong, it would not toll the statute for a plaintiff who has allegedly suffered several different wrongs, pursues only one remedy as to those wrongs. Id. The court concluded that the plaintiff had alleged different wrongs.

In the first action, she alleged that her employment had been terminated in retaliation for filing worker's compensation claims. In the second action, she alleged that her employer forced her to sign a termination agreement in order to interfere with her right to obtain certain benefits. The court noted that if she was successful in the first claim, she could still recover benefits due and penalties under ERISA § 502, and indeed, it was for this reason that the state-law claims were not preempted by ERISA. Id.

Here, plaintiff alleged in the worker's compensation claim that she was "wrongfully discriminated against in that she was terminated on September 11, 2009 while on temporary disability as a result of her industrial injuries," in violation of Labor Code § 132a; while the claim in the FAC is that plaintiff's termination violated ERISA § 510 "because the termination was intended to deprive [the plaintiff] of employment benefits regulated by ERISA to which she was entitled while on leave." FINRA argues that under Hinton, plaintiff was pursuing two different remedies for two different wrongs, and thus, the filing of the worker's compensation claim did not toll the running of the statute of limitations for the ERISA § 510 claim.

The court finds that the motion must be GRANTED. A discrimination claim under ERISA accrues when the allegedly discriminatory decision was made and communicated to the worker. Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1140-41 (7th Cir. 1992). Here, plaintiff was terminated in September 2009, and did not file the FAC (which for the first time

alleged the § 510 claim) until September 2012. Thus, under the applicable two-year statute of limitations, the claim is time-barred.

With regard to equitable tolling, the court finds that plaintiff has not established that she meets the requirements. In addition, under the reasoning of the Ninth Circuit in Hinton, the filing of the Labor Code § 132a claim in the worker's compensation proceeding did not toll the running of the statute of limitations as to the ERISA § 510 claim.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss the third cause of action against FINRA is GRANTED, and FINRA is dismissed from the case.

The November 7, 2012 hearing date is VACATED.

**IT IS SO ORDERED.**

Dated: November 5, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge